## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL NOVEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4844** |
| **DARREL VANNOY** | **SECTION "H"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Carl Novel, ("Novel") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On July 16, 2009, Novel was charged by Bill of Information in Orleans with one count of armed robbery and one count of aggravated kidnapping.[3] The second count was amended on June 10, 2011 to second degree kidnapping.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 6.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 7/16/09.

[4]St. Rec. Vol. 1 of 6, Bill of Information, 7/16/09 (handwritten amendment 6/10/11); Minute Entry, 6/10/11.

The record reflects that, in 2008, Natalie Ross and her fiancé, Wendell Cousin, lived together in Slidell, Louisiana, with their two year old daughter.[5] At the time, Ross operated a small hair salon and barber shop out of the house.  In early May of 2008, Ross's high school friend, Kashi Fernandez, called and later stopped by the house to visit Ross.  Ross saw Fernandez walking away from the back door and she went to the front of the house to flag Fernandez down before she drove away.  Fernandez was with someone Ross did not recognize.  Fernandez then came inside for a brief visit and introduced her boyfriend, Novel, to Ross and Cousin.

One morning about one week later, Fernandez called and asked Ross to pick her up from Curran Boulevard in Orleans Parish.  Fernandez called back four or five times throughout the day to confirm that Ross was coming to pick her up.  At about four o'clock in the afternoon, Ross called Cousin and asked him to pick up Fernandez and bring her to Fernandez's mother's home in Gentilly.

When Cousin arrived to pick up Fernandez, he could not find her.  He got her telephone number from Ross and called her directly.  Fernandez told Cousin to pick her up at an address at the end of Sand Street just off of Curran Boulevard.  When Cousin arrived on Sand Street, he saw Fernandez standing in a driveway with Novel.  Cousin parked his car and cleared items off of the passenger seat.  When he looked up, he saw two men standing in the street pointing guns into the car.  At that instant, Novel, who was armed, opened the passenger door, got in, and said, "Where's the money?"  Cousin put his hands up and told Novel he had $600 in his top pocket.  Novel removed the money and told Cousin to get out of the car.

---

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal.  *State v. Novel*, 103 So.3d 746 (La. App. 4th Cir. 2012) (Table); *State v. Novel*, No. 2011-KA-1569, 2012 WL 6618758, at *1-3 (La. App. 4th Cir. Oct. 24, 2012); St. Rec. Vol. 3 of 6, 4th Cir. Opinion, 2011-KA-1569, pp. 2-5, 10/24/12.

The men led Cousin into the back yard of an adjacent house, and he was made to lie face down. The men searched his pockets and took his wallet and cell phone. The men asked Cousin where the rest of the money was "and the dope." Cousin told the men that he did not have any, and one of the men replied, "She said ya'll have it. And I know your fiancé[e] and daughter's at the house, and if we go over there and don't get anything, I'm killing both of them."

Cousin began cursing at the men, and they hit him in the back of the head with a gun and tied him up. They picked him up, walked him to his car and put him in the trunk. He heard the men get in to the car, and the car drove off. Cousin could hear the men talking, but he had trouble making out what anyone said because the radio was playing. After traveling for an unknown distance, the car stopped and all the doors opened. The radio went silent, and Cousin heard someone say, "Take care of your business, and wipe the car down."

Cousin realized his life was in danger, so as the car drove around, he began to pull at the ropes as hard as he could. He was able to loosen the knots and free himself. He pulled the internal trunk release and jumped out of the car when it slowed down. He ran about two blocks until he saw a woman, later identified as Zena Urby, outside with a child. He used her phone to call Ross to tell her to get out of the house and take the baby across the street to the neighbor's house. Cousin was able to get a ride to Slidell, where he found Ross at their neighbor's house.

Cousin eventually called the police and went back to New Orleans with Ross where they filed a police report with New Orleans Police Detective Darryl Doucette. Cousin still had parts of the restraint rope tied around his wrists when he was interviewed.

3

Novel was tried before a jury on June 13, 2011, and was found guilty as charged on both counts.[6]  On July 15, 2011, the Trial Court adjudicated Novel to be a second offender, and also denied his motion for a new trial.[7]  After waiver of legal delays, the Trial Court sentenced Novel to concurrent prison sentences of 198 years in prison on count one as a second offender and 80 years in prison on count two, with both sentences to be served without benefit of parole, probation, or suspension of sentence.[8]  The Court also denied Novel's motion to reconsider the sentences.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Novel's appointed counsel argued that the Trial Court erred when it denied a mistrial when Detective Doucette improperly commented on other crimes evidence.[10]  Novel asserted *pro se* that he was denied due process when the prosecutor introduced insufficient and inadequate evidence of the validity of his prior guilty plea conviction during the multiple bill hearing.[11]  On October 24, 2012, the Louisiana Fourth Circuit affirmed Novel's conviction, multiple offender adjudication, and sentences finding no merit in either claim.[12]

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 6/13/11; St. Rec. Vol. 4 of 6, Jury Verdict (Count 1), 6/13/11; Jury Verdict (Count 2), 6/13/11; Trial Transcript, 6/13/11.  Fernandez was charged in a separate case, and she too was convicted simple robbery and second degree kidnapping.  *State v. Fernandez*, 50 So.3d 219 (La. App. 4th Cir. 2010).

[7]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 7/15/11; Multiple Bill, 7/6/11; Multiple Bill, 7/7/11; St. Rec. Vol. 2 of 6, Motion for New Trial, 6/21/11; Motion for Post-Verdict Judgment of Acquittal, 6/21/11; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 7/15/11.

[8]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 7/15/11; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 7/15/11.

[9]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 7/15/11; St. Rec. Vol. 2 of 6, Motion to Reconsider Sentence, 7/15/11.

[10]St. Rec. Vol. 3 of 6, Appeal Brief, 2011-KA-1569, 1/3/12.

[11]St. Rec. Vol. 3 of 6, *Pro Se* Supplemental Appeal Brief, 2011-KA-1569, 4/4/12.

[12]*Novel*, 2012 WL 6618758, at *1; St. Rec. Vol. 3 of 6, 4th Cir. Opinion, 2011-KA-1569, 10/24/12.

The Louisiana Supreme Court denied Novel's subsequent writ application without stated reasons on April 26, 2013.[13]  Novel's conviction was final under federal law ninety (90) days later, on July 25, 2013, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On January 27, 2014, Novel signed and submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[14] (1) he was denied effective assistance of counsel when counsel failed to move for a mistrial when the Trial Court did not timely rule on an objection to the prosecutor's prejudicial remarks; (2) he was denied adequate and meaningful review because the trial transcript is missing substantial portions of critical witness testimony and the prosecutor's prejudicial remarks about uncharged crimes which already had been ruled inadmissible; (3) the prosecutor knowingly and intentionally used false and/or perjured testimony; (4) the prosecutor used inadmissible other crimes evidence; (5) trial counsel was ineffective when he failed to object to other crimes evidence, move for mistrial, and/or request an admonishment; (6) he received ineffective assistance of counsel when counsel prevented him from testifying, did not subpoena four witnesses, and "one of them left during trial;" and (7) counsel was ineffective when he advised petitioner to reject a plea offer and go to trial.

---

[13]*State v. Novel*, 112 So.3d 838 (La. 2013); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2012-KO-2543, 4/26/13; La. S. Ct. Writ Application, 12-KO-2543, 11/29/12 (dated 11/19/12); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2012-KO-2543, 11/29/12.

[14]St. Rec. Vol. 1 of 6, Application for Post-Conviction Relief, 2/4/14 (dated 1/27/14).

On February 20, 2014, the Trial Court summarily denied Novel's application finding that his claims were not proven or supported by the record.[15]  On May 6, 2014, the Louisiana Fourth Circuit granted Novel's related writ application in part for the Trial Court to appoint counsel and conduct an evidentiary hearing on Novel's sixth claim that trial counsel was ineffective for preventing him from testifying on his own behalf.[16]  The application was denied without comment on the other six claims.

On May 22, 2015, the Trial Court held an evidentiary hearing at which Novel was represented by counsel, and thereafter denied relief on the issue finding that Novel's testimony and witness were not credible.[17]  The Louisiana Fourth Circuit denied Novel's subsequent writ application finding no error in the Trial Court's judgment after the hearing.[18]  The Louisiana Supreme Court denied Novel's related writ application finding that he failed to show he was denied effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and failed to meet his burden of proof under La. Code Crim. P. art. 930.2, on the remaining claims.[19]

---

[15]St. Rec. Vol. 1 of 6, Trial Court Judgment, 2/20/14.

[16]St. Rec. Vol. 5 of 6, 4th Cir. Order, 2014-K-0329, 5/6/14; 4th Cir. Writ Application, 2014-K-0329, 4/1/14 (dated 3/16/14).

[17]St. Rec. Vol. 1 of 6, Minute Entry, 5/22/15; Minute Entry, 5/28/15; Trial Court Judgment, 5/28/15; St. Rec. Vol. 5 of 6, Hearing Transcript, 5/22/15.

[18]St. Rec. Vol. 5 of 6, 4th Cir. Order, 2015-K-1050, 10/9/15; 4th Cir. Writ Application, 2015-K-1050, 9/28/15 (dated 9/17/15).  This application was timely filed within fourteen days of his receipt of the evidentiary hearing transcript.  *See* St. Rec. Vol. 1 of 6, Trial Court Judgment, 6/15/15; St. Rec. Vol. 5 of 6, 4th Cir. Order, 2015-K-0684, 7/1/15.

[19]*State ex rel. Novel v. State*, 214 So.3d 852 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2015-KH-2087, 3/31/17; La. S. Ct. Writ Application, 15-KH-2087, 11/13/15 (dated 11/9/15); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2015-KH-2087, 11/13/15.

## II.    <u>Federal Habeas Petition</u>

On June 7, 2017, after correction of certain deficiencies, the clerk of this Court filed Novel's petition for federal habeas corpus relief in which asserted the following grounds for relief:[20] (1) the state trial court denied him effective assistance of counsel when it failed to conduct an evidentiary hearing to develop his allegations and when it refused to appoint counsel to perfect his post-conviction claims that counsel failed to move for a mistrial and allowed the state trial court to not rule on a timely objection to the prosecutors prejudicial remarks; (2) the state trial court denied him due process when it failed to conduct an evidentiary hearing on his claim that there was an incomplete record to determine the merits of his appellate claims; (3) the state trial court erred when it denied relief without an evidentiary hearing on his claim that the prosecutor knowingly and intentionally used false and perjured testimony at trial; (4) the state trial court erred when it denied relief without an evidentiary hearing on his claim that the State presented inadmissible other crimes evidence without giving notice to the defense; (5) the state trial court erred when it denied, without an evidentiary hearing, his claim that counsel was ineffective for failing to object to other crimes evidence, move for a mistrial, and/or request an admonishment; (6) the state trial court erred in denying without an evidentiary hearing his claim that counsel was ineffective when he prevented Novel from testifying, did not subpoena four witnesses, and "one of them left during trial;" and (7) the state trial court erred by denying his ineffective assistance of counsel claim where the testimony at the evidentiary hearing substantiated his allegations that counsel was ineffective for advising him to reject a plea offer and go to trial.

---

[20]Rec. Doc. No. 6.

The State filed an answer and memorandum in opposition to the petition asserting that Novels' challenges to the state post-conviction proceedings are not cognizable on federal habeas review.[21]  In addition, the State argues that his second and fourth claims fail to present a cognizable or exhausted federal issue for purposes of federal habeas review.  The State further contends that Novel is not entitled to relief on his remaining claims of ineffective assistance of counsel (claims one, five, six, and seven) or his third claim asserting prosecutorial misconduct.

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on April 27, 2017.[23]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[21]Rec. Doc. No. 13.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Novel's original deficient petition on May 8, 2017, when it was received, and opened the matter on June 7, 2017, when he paid the filing fee.  Novel dated his signature on the original complaint on April 27, 2017, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this Court.

The State concedes the timeliness of the petition and exhaustion of state court review and does not assert that any state court imposed a procedural bar to review of the claims.[24]  The Court, therefore, will address the substance of Novel's claims.

## IV.    Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

---

[24]The State questions whether Novel's last Louisiana Supreme Court writ application was timely filed within thirty-days of the appellate court's ruling.  The Louisiana Fourth Circuit denied Novel's writ application in No. 2015-KO-1050 on October 9, 2015.  Novel had thirty days to file a writ application in the Louisiana Supreme Court.  The thirtieth day was Sunday, November 8, 2015, leaving the deadline to fall on Monday, November 9, 2015.  This in fact is the day that Novel signed his Louisiana Supreme Court writ application.  As the State recognizes, this is presumed to be the date he delivered the pleadings to prison officials for mailing.  The State has offered nothing to rebut this presumption, and the November 10, 2015 postmark date (one day after the deadline) is not compelling.  The Court does not find timeliness of that writ application, or this federal petition, to be at issue.

*Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Analysis

### A.    Errors in the State Post-Conviction Proceedings

Novel asserts an overarching claim that the state trial court erred when it denied him relief on his state post-conviction claims without an evidentiary hearing and denied him his constitutional right to appointment of counsel to develop those claims. Novel fails to consider or address the fact that some of his ineffective assistance of counsel claims were denied after the state trial court held the mandated evidentiary hearing at which Novel had appointed counsel.

Nevertheless, it is well settled that federal habeas corpus relief cannot be granted to remedy errors which occurred in state post-conviction proceedings. As the United States Fifth Circuit Court of Appeals has explained, "[a]n attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." (internal quotations omitted) *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073,

1080 (5th Cir. 1997); *see also*, *Pitts v. Tanner*, No. 14-3145, 2015 WL 10045174, at \*23 (W.D. La. Dec. 14, 2015) ("To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding."), *adopted by* 2016 WL 554884 (W.D. La. Feb. 10, 2016).

The Fifth Circuit also has emphatically held that federal habeas court "are without jurisdiction to review the constitutionality of [a petitioner's] state postconviction proceedings." *Kinsel v. Cain*, 647 F.3d 265, 273-74 (5th Cir. 2011). Thus, Novel has no basis under federal habeas law to assert challenges to the state trial court's decision regarding whether to hold a hearing or the alleged other errors during his post-conviction proceedings.

In addition, it is a "longstanding rule that prisoners are not entitled to counsel during habeas proceedings and thus cannot state a claim for ineffective assistance during those proceedings." *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Contrary to Novel's naive arguments, the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), did not and in fact declined to create a constitutional right to counsel in a state post-conviction proceeding. The purpose of its decision in *Martinez* instead was to create a narrow exception to a state imposed procedural bar to review of a petitioner's claim of ineffective assistance of <u>trial</u> counsel. *Id*. at 9, 17; *see also*, *Davila v. Davis*, \_\_ U.S. \_\_, 137 S. Ct. 2058, 2055-56 (2017). Novel's underlying ineffective assistance of trial counsel claims were not procedurally barred in the state courts. Instead, the state courts denied his claims as meritless, citing *Strickland*. Thus, Novel has no relief available to him under *Martinez* and its progeny.

For these reasons, this Court is without authority under the AEDPA to consider or address any procedural infirmity alleged to have occurred in Novel's state court post-conviction review,

and there is no basis to consider his assertion of a right to counsel in that state post-conviction proceeding.  He is not entitled to federal habeas corpus relief on any such claims.

### B.    <u>Record on Appeal (Claim No. 2)</u>

Novel contends that he was denied full and complete appellate review because the trial transcript did not include "critical" and "prejudicial remarks" by the prosecutor about the alleged murder of the victim's grandparents for which Novel and Kashi Fernandez were uncharged suspects at the time of Novel's trial.  Under a broad reading, Novel asserts that reference to the murders had been ruled inadmissible, and the prosecutor later commented on the murders, which statement was left out of the trial transcript.  The State responds that Novel's claim is based on state law and is not cognizable on federal habeas review.

Novel raised this claim in his application for post-conviction relief, and the Trial Court found the claim unsupported by the record.  In the last reasoned decision, the Louisiana Supreme Court also found that Novel failed to satisfy his post-conviction burden of proof under La. Code Crim. Proc. 930.2.

To the extent Novel raises this issue as a violation of state law, his claim must fail.  Federal habeas review may only consider constitutional violations and noncompliance with federal law as interpreted by the United States Supreme Court.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  The Court cannot provide habeas relief based on state law.  *Greer v. Warden, La. State Penitentiary*, No. 11-1727, 2014 WL 4387295, at *9 (W.D. La. Mar. 15. 2015); *Hedgesperth v. Warden, La. St. Pen.*, No. 11-2078, 2015 WL 1089325, at *6 (W.D. La. Mar. 5, 2015).

To the extent Novel contends that the incomplete transcript violated his due process rights, he has at least stated a cognizable claim for federal habeas review.  *See Griffin v. Illinois*, 351 U.S. 12, 19-21 (1956).  Novel claims that the incomplete trial transcript denied him complete appellate

review. It is indisputably true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record. *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971). However, the Supreme Court has not held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.

Instead, to prevail on a claim that the trial record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner. *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal); *Bozeman v. Cain*, No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), *adopted*, 2010 WL 2977402 (E.D. La. July 20, 2010) (petitioner's claim failed when there was no actual prejudice resulting from the failure to transcribe a bench conference). Novel has made no such showing that any portion of the transcript was excluded or that he suffered any prejudice in this case.

The portions of the transcript he claims to be missing are quoted, at least in part, in his own briefs filed in the state courts and this federal court. The transcript in the record is replete with testimony about and references to the murders, which were used to explain why Cousin was in jail when he was interviewed by police in May of 2009. The transcript includes nothing to accuse or link Cousin to the murders.

Furthermore, the record contains nothing to indicate that the references to the murder or to Fernandez were deemed inadmissible, although the state trial court limited the references by counsel during jury voir dire. Novel even quotes the bench conference from the transcript during

14

which the Trial Court authorized references to Fernandez during voir dire, because her role was relevant to Novel's case.  In other words, there is nothing in the record to demonstrate that the references to the murder of Cousin's grandparents or to Fernandez herself were deemed inadmissible by the Trial Court as Novel now suggests.

The record also reflects that it was Novel's counsel who brought up during his closing argument, without any prior evidence or testimony, that Cousin was in jail because he was a suspect in his own grandparents' murders.[25]  The prosecutor's objection to that comment was sustained and the jury was admonished.[26]  The prosecutor's limited reference to the murders made during rebuttal was in direct response to defense counsel's unwarranted comments and are certainly contained in the trial transcript at pages 132 and 133, as cited by Novel himself.  When the State sought to rebut the defense's attempt to discredit Cousin, defense counsel's objections were overruled, and the State was allowed to refocus the jury on the testimony and evidence, away from defense counsel's unsupported conjecture.  With all of this apparent in the record, Novel has never explained to this or any court what he believes to be missing from any part of the transcript that would have impacted his direct appeal.

Based on the record, Novel has failed to identify any missing portions of the transcript or establish that any such information was material to the claims asserted on appeal.  To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.  *See Mullen*, 808 F.2d at 1146.  Novel has not met this burden.  The record

---

[25]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 117-18, 6/13/11.

[26]*Id*., at p. 118.

appears to have been adequate for full appellate review, and there was no denial of a meaningful appeal. *See Schwander v. Blackburn*, 750 F.2d 494, 497-98 (5th Cir. 1985) (explaining that petitioner was not denied a meaningful appeal where the omitted portions of the trial transcript were immaterial to the error alleged on direct appeal); *Thomas v. Cain*, No. 12-2818, 2013 WL 5960808, at *5 (E.D. La. Nov. 6, 2013) (finding that the record was adequate for resolution of appellate claims).

The state courts' denial of relief on the due process aspect of this claim was neither contrary to nor an unreasonable application of Supreme Court precedent. Novel is not entitled to federal habeas corpus relief on this claim.

## C.   Notice of Other Crimes Evidence (Claim No. 4)

Novel alleges that the State was erroneously allowed to introduce other crimes evidence without providing him the required notice under Louisiana law. He again specifically references testimony about the murder of Cousin's grandparents allegedly elicited by the State from Cousin. Under a broad reading, he also claims that the State erred in failing to provide him with adequate notice of its intent to reference the murders so that a hearing could be conducted in accordance with *State v. Prieur*, 277 So.2d 126 (La. 1993) and other state law.[27] The state courts' summarily denied relief on this issue on post-conviction review finding Novel failed to meet his burden of proof. The State here contends that the issue of notice is not cognizable on federal habeas review.

---

[27]In *Prieur*, the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding. *See also*, La. Code Evid. art. 404(B)(1); *State v. Jackson*, 625 So.2d 146, 148 (La. 1993). Under Louisiana law, to constitute impermissible other crimes evidence, the evidence must unambiguously implicate the defendant in another crime and not meet one of the aforementioned exceptions. *State v. Edwards*, 406 So.2d 1331, 1349 (La. 1981); *State v. Holmes*, 841 So.2d 80 (La. App. 4th Cir. 2003).

To the extent Novel claims that the evidence was inadmissible under state law or that error occurred in failing to give notice for a *Prieur* hearing to be held, his claim is not cognizable under federal habeas review.  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010); *Lampton v. Cain*, 268 Fed. Appx. 367, 368 (5th Cir. 2008) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)).  States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. Texas*, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941)); *see Swarthout*, 562 U.S. at 219 (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are <u>not</u> cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

The question of due process in the criminal proceeding presents a mixed question of law and fact.  *Dickson v. Sullivan*, 849 F.2d 403, 405-06 (9th Cir. 1988).  Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

In *Lisenba*, the Supreme Court stated that the denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba*, 314 U.S. at 236. In keeping with this principle, the United States Fifth Circuit Court of Appeals has held that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief <u>only</u> if it is "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Givens v. Cockrell*, 265 F.3d 302 (5th Cir. 2001); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

In this case, Novel has failed to establish that the references to the murder of Cousin's grandparents were prejudicial to his defense or that they otherwise impacted the verdict. A reading of the transcript reveals no statement made to the jury that linked Novel to the murders. As explained previously, the references to the murders were used to explain why Cousin was detained when he was questioned by police in May 9, 2009, which was about a week before Fernandez's trial for her role in the robbery and kidnapping of Cousin. As Novel quotes from the transcript, defense counsel was well aware prior to the start of trial that the State planned to use the proximity of the murders to Fernandez's trial to establish timing of Cousin's incarceration.

Novel has not established that references to the murders or Fernandez were inadmissible, prejudicial, or admitted in violation of the Due Process Clause. Without some showing of this nature, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial. *See Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993); *see also Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. Novel is not entitled to relief on this claim.

### D.  <u>False and Perjured Testimony (Claim No. 3)</u>

Novel claims that the prosecutors knowingly used false and perjured testimony when they elicited testimony from Cousin about his detention on May 9, 2009.  Novel suggests that Cousin was in jail after his arrest on criminal charges and was not in jail for his protection and the prosecutor knew this.

Novel asserted this claim on post-conviction review and the state courts' summarily denied relief for failure to meet his burden of proof.  The State argues in this Court that the state courts' denial of relief was not contrary to or an unreasonable application of federal law.

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact.  *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emueqbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997), *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989)); *see also*, *Thompson v. Cain*, 161 F.3d 802, 808 (5th Cir. 1998).  This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150, 766 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the defendant must show that: (1) the testimony was actually false; (2) the State knew it was false; and (3) the testimony was material.  *Duncan v. Cockrell*, No. 02-20901, 2003 WL 21545926, at *3 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material" only if there is any reasonable likelihood that it

could have affected the jury's verdict. *Duncan*, 2003 WL 21545926, at *3 (citing *Nobles*, 127 F.3d at 415).

As determined by the state courts, Novel has not established that Cousin's testimony was false or that the State had any knowledge of an arrest or charges against him in Orleans Parish before or during trial. Even looking at the alleged exhibit provided to the state courts by Novel, he has not established that Cousin was under arrest when he was detained in jail on May 9, 2009. The form presented by Novel instead indicates that, on May 10, 2009, one day later, Cousin may have been arrested on unrelated charges in St. Tammany Parish.[28] Novel has not established that any Orleans Parish prosecutor was aware of this arrest made in another parish one day after Cousin was interviewed while in protective custody.

Novel simply has not met any of the factors necessary to establish that Cousin lied or that the State suborned perjury. The jury was made aware of Cousin's prior criminal history and that he was in a prison facility when the interview was conducted on May 9, 2009. This information invited the jury to question Cousin's credibility; yet, the jury still found Novel guilty as charged. There is nothing to suggest that the verdict would have been different if the jury had known any more information about Cousin's whereabouts the day after he spoke to police on May 9, 2009. This type of credibility call is purely in the domain of the jury as factfinder, not for this court to second-guess on habeas review.

Novel has offered nothing to support his claim that Cousin lied or that the State suborned false or perjured testimony. For these reasons, Novel has failed to establish that the state courts'

---

[28]St. Rec. Vol. 1 of 6, Cousin Arrest Sheet, 5/10/09; Cousin Arrest Report, 11/21/13; Wendell Cousin's Rap Sheet, 7/2/09.

denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.  He is not entitled to relief on this claim.

### E.   <u>Effective Assistance of Counsel (Claim Nos. 1, 5, 6, 7)</u>

Novel alleges that he was denied effective assistance of trial counsel when his counsel: (1) failed to move for a mistrial when the state trial court did not timely rule on defense counsel's objection to prejudicial remarks by the prosecutor; (2) failed to object to other crimes evidence, move for a mistrial, or request a jury admonishment; (3) prevented him from testifying, did not subpoena witnesses, and "one left during trial;" and (4) advised him to reject a plea offer and proceed to trial.

On post-conviction review, the state trial court summarily dismissed each of Novel's claims finding no support in the record.[29]  Following the Louisiana Fourth Circuit's remand order, the Trial Court appointed counsel and held an evidentiary hearing on Novel's claims that counsel prevented him from testifying and advised him to reject a plea offer.[30]  The Court found the testimony of Novel's witness was not credible and held that Novel failed to show ineffective assistance of his trial counsel, Novel was involved in the decision that he not testify, and trial counsel communicated and advised Novel about the plea offer.[31]  The Louisiana Fourth Circuit found no error in the Trial Court's denial of relief and the Louisiana Supreme Court held that Novel failed to show that he received ineffective assistance under *Strickland*.

---

[29]St. Rec. Vol. 1 of 6, Trial Court Judgment, 2/20/14.

[30]St. Rec. Vol. 1 of 6, Trial Court Judgment, 5/28/15; St. Rec. Vol. 5 of 6, Hearing Transcript, 5/22/15; 4th Cir. Order, 2014-K-0329, 5/6/14.

[31]St. Rec. Vol. 5 of 6, Hearing Transcript, pp. 50-51, 5/22/15; St. Rec. Vol. 1 of 6, Trial Court Judgment, 5/28/15.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 F.2d at 296. In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls

within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

## 1.    Objection to State's Rebuttal Argument (Claim No. 1)

Novel first alleges that he was denied effective assistance of counsel when his trial counsel did not move for mistrial or seek admonishment when the Trial Court failed to timely rule on an objection to part of the State's rebuttal argument. The trial transcript contains the following exchange:[32]

---

[32]St. Rec. Vol. 4 of 6, Trial Transcript, pp.132-33, 6/13/11.

MR. MYERS:         […]  Now I'm going to hit on this a little bit more.  He knew damn well when he asked that question about him being arrested when he was shown that lineup, what had happened.  He knew damn well, that a week --

MR. JENKINS:         Objection.

MR. MYERS:         He got into it.

MR. JENKINS:         Objection.

THE COURT:         Overruled.

MR. MYERS:         A week before his co-perpetrator went to court for trial - -

MR. JENKINS:         Objection.  You already told them that --

THE COURT:         Overruled.

MR. MYERS:         His grandparents were murdered, and he was in danger.

MR. JENKINS:         Objection.  That's not what the detective stated, Your Honor.

MR. MYERS:         Was not under arrest.  'Cause he's a witness. […]

Broadly construed, Novel complains that his trial counsel did not insist that the Court rule on the last objection made and instead allowed the State to continue with its "prejudicial" rebuttal argument.  Novel derails the credibility of his own argument when he attempts to show prejudice by misquoting the trial transcript and imputing damning language that was not uttered by the State.  Nowhere in the transcript (Novel cites page 132) does the prosecutor state, "the victims [sic] grandparents was [sic] murdered and Carl Novel murdered them."[33]  His misrepresentation of the transcript notwithstanding, Novel has not pointed to any deficient performance by his counsel or prejudice arising from his counsel's actions during the real rebuttal argument.

---

[33]Rec. Doc. No. 6-1, p. 10.

In the course of the discussion, the Trial Court denied defense counsel's repeated objections to the State's argument. The Court's ruling on the last objection is not indicated in the record. However, the Court's silence coupled with the State's continued statement to the jury would imply that the objection was denied. Nevertheless, counsel's failure to request a reply, assuming one was not given, was not prejudicial to Novel. The jury had already heard testimony from Cousin that, on May 9, 2009, he was in custody for his own protection following his grandparents' murders. The statement was supported by the evidence and was not objectionable or prejudicial. Counsel is not ineffective for failing to pursue a baseless objection. *See Green*, 160 F.3d at 1037-38 (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Novel has not established that his counsel was ineffective or that the state courts' denial of relief on this issue was contrary to or an unreasonable application of *Strickland*.

## 2.      Objection to Arrest Reference (Claim No. 5)

Under a broad reading, Novel asserts that he was denied effective assistance of counsel when his counsel did not object enough to the fact that one officer used the word "arrest" when explaining where he obtained Novel's picture for the photographic line-up. Once again, Novel fails to provide an accurate reflection of the trial proceedings.

The trial transcript reflects that Officer Darryl Doucette obtained the name Carl Novel as a suspect and ran the name through the "NCIC computer." He was then asked by the State:[34]

---

[34]St. Rec. Vol. 4 of 6, Trial Transcript, p. 34, 6/13/11.

Q.      And what did you do once you got his name?

A.      They have what we call ATN numbers, or SID numbers.  Every time a person is arrested and --

The Officer's statement was immediately met with an objection and motion for mistrial by Novel's trial counsel.  The Trial Court summarily denied the mistrial and directed the prosecutor to continue with his questioning.  The prosecutor briefly continued questioning the officer and avoided any further mention of arrests.[35]  Shortly after this, defense counsel requested and was granted a sidebar outside of the presence of the jury at which he gave extensive reasons for the Court to find the reference to arrests and the showing of the arrest photograph to the jury prejudicial and grounds for a mistrial.[36]  The Trial Court again denied the motion for mistrial finding that the officer did not further discuss the arrest photograph or the police numbers and the line-up in which Novel was wearing a non-descript white t-shirt was going to be introduced in color.

The fact that defense counsel's objection and motion for mistrial were not successful does not equate to deficient performance or prejudice under *Strickland*.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  In conjunction with his timely objection and motion, defense counsel asserted the same arguments that Novel now suggests should have been brought before the court.

---

[35]*Id.*, at p. 35.

[36]*Id.*, at p. 35-36.

Novel has not established that his counsel was ineffective or that the state courts' denial of relief on this issue was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this issue.

### 3.    Counsel Did Not Prevent Him from Testifying (Claim No. 6)

Novel asserts that exercising his right to testify formed the basis for his decision to proceed to trial and his trial counsel prevented him from testifying.  This matter was the reason for the evidentiary hearing held in the state trial court on post-conviction review.  After receiving testimony at the hearing from Novel, his former trial counsel, and another witness, the state trial court held that the testimony and affidavit of Novel's witness were not credible and the decision for Novel not to testify was reached after conversations between Novel and his counsel, this despite Novel's self-serving affidavit.  In other words, the Court found that Novel was not forced to remain silent and instead participated in the decision not to testify.  On review, the Louisiana Supreme Court resolved that Novel failed to meet his burden of proof under *Strickland*.

At the evidentiary hearing on this issue, Novel testified that he had no witnesses for his trial counsel to call on his behalf so it was important to him that he be able to testify.[37]  He stated that he discussed his testimony in detail with counsel.[38]  He wanted to testify about the drugs and other matters that Cousin left out, and his counsel did not want that information before the jury.[39]

---

[37]St. Rec. Vol. 5 of 6, Hearing Transcript, pp. 8-9, 5/22/15.

[38]*Id.*, at p. 7.

[39]*Id.*, at pp. 7-8.

Novel's witness, Sharon Richards, testified that she heard Novel and his lawyer bickering about whether Novel should testify.[40]

Novel's former trial counsel also testified and denied that any of Novel's assertions were true. Counsel testified that he visited Novel several times to discuss his case and whether he would testify at trial.[41] That was not a decision left to the day of trial, although the decision was strictly left to Novel. He stated that Novel declined to testify for reasons counsel held in confidence under the attorney/client privilege.[42]

Novel conceded at the hearing that he did not provide his counsel with the names of any witnesses for trial. His former counsel also testified that he apparently could not locate any witnesses that would have been beneficial to the defense, especially since there were so few witnesses to the crime. It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). Based on Novel's concessions at the state court post-conviction hearing, he has failed to establish that there were witnesses who should have been called by his counsel. He has not met his burden.

The denial of relief for the state trial court turned on the finding that Novel and Richards were not credible witnesses. The Trial Court was concerned that the affidavits were fill-in-the-blank and prepared for Novel and Richards to sign; in other words, there was no indication that

---

[40]*Id.*, at pp. 19-34.

[41]*Id.*, at pp. 34-41.

[42]Novel did not waive the attorney client privilege at the hearing so counsel maintained the privilege.

these were the words of the affiants.  The Trial Court, who had been the trial judge, found that defense counsel had properly communicated with Novel about his right to testify.

The findings of fact reached by the state trial court are supported by the record.  Novel has presented nothing to this Court to contradict or discredit those findings.  The record therefore contains nothing to establish that defense counsel prevented Novel from testifying at trial or engaged in any deficient performance in connection with Novel's decision not to testify.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Novel is not entitled to relief on this claim.

### 4.      Communication of the Plea Offer (Claim No. 7)

Novel alleges that his counsel failed to advise him of the sentence he would face if he accepted the plea offer by the State and instead advised him to go to trial.  Novel testified at the state post-conviction hearing that his counsel told him about the plea prior to the start of trial and somewhat changed his claim to assert that his counsel advised him to reject the plea because he could get an acquittal after trial.  His former counsel testified as well that the plea proposal was conveyed to Novel and confirmation of this was placed on the record.  Counsel also made clear that the proposal made on the morning of trial was contingent upon the approval of the district attorney's office.  He stated that the defense was asked if they would consider a proposed plea and if Novel was interested, the prosecutor "would go back" and try to get approval to make a deal. The trial transcript contains the following explanation that was presented in open court with Novel present in the courtroom before trial:[43]

> MR. JENKINS:      In the Plea negotiations with the State of Louisiana, there was an offer of 25 years, and Mr. Carl Novel rejected that offer, so I just wanted to

---

[43]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 4-5, 6/13/11.

put that on the Record. And at some point today -- it was not so much an offer from the State, it was that would we consider a Double and 20, and then if he would consider that, they would go back and seek to get it, but it was not a firm offer, and he rejected that as well.

THE COURT:         So he rejected a quasi offer of a Double Bill and 20 years today. That's been turned down?

MR. JENKINS:         Correct. Yes.

In *Missouri v. Frye*, 566 U.S. 134, 138-46 (2012) and *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 145.

In addition to proving that counsel's performance was objectively deficient, a petitioner must also meet his burden under *Strickland*'s second prong and prove that counsel's errors actually prejudiced his case. To prove actual prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Thus, the petitioner must show that (1) "there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "that the court would have accepted its terms," and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 164.

As noted above, the state trial court held after the post-conviction hearing that Novel's counsel did communicate the plea offer to him prior to trial.  Novel was present in court at the time of his counsel's statement to the Trial Court before trial, and did not dispute the representation made by counsel or contend that he was unaware of such offer.  He also testified at the post-conviction hearing that he understood the sentence exposure being offered prior to trial.  Given Novel's concessions that his counsel advised him of the "Double and 20" plea offer, he has not established that his trial counsel misled him or withheld the offer from him.

As for the *Lafler* factors, Novel has not established that the offer was a true plea offer that could have been presented to or accepted by the state trial court.  The record makes clear that the "proposal" of a "Double and 20" was not an approved deal by either the State or the defense.  It was a possibility that still needed to be vetted to other authorities by the prosecutor, who would "seek to get it" if Novel was interested.  This tentative proposal was not a firm deal and was more of a preliminary question to see if Novel might be interested in pursuing a plea.

Furthermore, the fact that Novel was found guilty and sentenced to serve a term of imprisonment as a multiple offender greater than he perhaps anticipated does not equate to error by his counsel.  The Supreme Court in *Frye* held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145.  Under *Lafler*, prejudice can be shown if the petitioner establishes that "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168.  Novel has not establish any such prejudice arising from counsel's actions or advice regarding the plea proposal made before his trial. *See also*, *Day*, 566 F.3d at 536 (quoting *Strickland*, 466 U.S. at 693).

Novel has not demonstrated that his counsel acted deficiently or prejudicially in communicating or advising about the State's plea proposal.  He, therefore, has not established that the state courts' denial or relief was contrary to or an unreasonable application of the *Strickland* standards.  He is not entitled to relief on this issue.

## VI.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Carl Novel's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[44]

New Orleans, Louisiana, this <u>27th</u> day of June, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[44]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.